IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARVIN DOUGLAS SUNDQUIST, | |
| Plaintiff, | 8:14-CV-220 |
| vs. | |
| STATE OF NEBRASKA, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on the defendants' motion to dismiss (filing 11). The plaintiff, Marvin Douglas Sundquist, is proceeding *pro* se and is suing the defendants under 42 U.S.C. § 1983 for allegedly violating his constitutional rights by requiring him to attend Alcoholics Anonymous ("A.A.") meetings as a condition of maintaining his probationary license to practice massage therapy. For the reasons discussed below, the defendants' motion will be granted in part and denied in part.

BACKGROUND[1]

According to Sundquist's complaint, in 2013, he possessed a probationary license to practice massage therapy in the State of Nebraska. *See* filing 1 at 2, 4. Sundquist does not allege how or why he was on probation. But public records associated with Sundquist's state licensure help clear up what transpired (to some extent).[2]

In December 2012, the Nebraska Department of Health and Human Services ("NDHHS") offered Sundquist a probationary massage license. As part of that offer, NDHHS required Sundquist to comply with the

---

[1] For purposes of the pending motion, the Court accepts as true the facts alleged in Sundquist's complaint. *See* Fed. R. Civ. P. 12(b)(6). And because Sundquist is proceeding *pro se*, the Court construes his complaint liberally. *See* Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 849 (8th Cir. 2014).

[2] The facts in the following paragraph are taken from the public records associated with Sundquist's licensure, which may be found at Nebraska Department of Health and Human Services, *License Information System Search*, available at: https://www.nebraska.gov/LISSearch/search.cgi (last visited July 31, 2015) [hereinafter "Licensure Records"]. The Court is not, at this time, taking judicial notice of these facts, but simply providing them for background purposes.

recommendations of an alcohol assessment completed in October 2012. In particular, it required Sundquist to: "Develop a sober support system such as attending twelve step meetings such as Alcoholics Anonymous. To comply with this recommendation, you must attend a minimum of 1 Alcoholics Anonymous meeting per week." *See* Licensure Records, Letter of December 4, 2012, at 2.

Apparently Sundquist accepted the offer of a probationary license. However, Sundquist alleges that he objected to the requirement that he attend A.A. meetings, based upon his (unspecified) "religious objections." Filing 1 at 2. In October 2013, the Nebraska Attorney General's Office, through Assistant Attorney General Ed Vierk, filed a motion with the NDHHS's Division of Public Health to revoke Sundquist's license, based on his failure to attend A.A. meetings. *See* filing 1 at 1–2; *see also* Licensure Records, Petition to Revoke Probation (Oct. 10, 2013). The Attorney General's Office also made Sundquist a settlement offer, but the offer required Sundquist to attend A.A. meetings. Filing 1 at 2. Sundquist alleges that he contacted Vierk and informed him that he objected to attending A.A. but that the remainder of the settlement was acceptable. The Attorney General's Office declined to remove that requirement.

Sundquist also alleges that he proposed a secular alternative: treatment by the same licensed alcohol and drug counselor who had provided the October 2012 evaluation the State had relied upon in imposing probation. But, Sundquist alleges, his licensing probation compliance monitor, defendant Ruth Schuldt, rejected this alternative and insisted that Sundquist attend A.A. Filing 1 at 2–3.

Sundquist brings this case against the State of Nebraska, the Nebraska Attorney General's Office, NDHHS, former Nebraska Attorney General Jon Bruning, Vierk, Schuldt, and Joseph Acierno, who was the Chief Medical Officer and Director of NDHHS's Division of Public Health.[3] Filing 1 at 1. Sundquist alleges that as a result of the defendants' actions to revoke his massage license, his career as a massage therapist has been ruined. He further alleges that by seeking revocation of his license, defendants caused him to be unemployed from December 2013 to January 2014, while he waited to find out what would happen to his license. Filing 1 at 1, 3–4. Sundquist seeks damages for these lost wages and other alleged consequences of his inability to practice massage therapy. Filing 1 at 4. He also seeks injunctive

---

[3] The Court is aware that Bruning and Acierno no longer hold those offices. But as explained below, the Court will dismiss Sundquist's claims against them in their individual capacities, and their successors will be substituted for them in their official capacities. *See* Fed. R. Civ. P. 25(d). The defendants' counsel should make a motion for such substitution as soon as is practicable.

relief "preventing any employees or departments within the State of Nebraska from requiring similar religious activities against their [sic] religious objections." Filing 1 at 3.

## STANDARD OF REVIEW
### JURISDICTION - FED. R. CIV. P. 12(B)(1)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges whether the Court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). A Rule 12(b)(1) motion can be presented as either a "facial" or "factual" challenge. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

Sovereign immunity is a jurisdictional, threshold matter that is properly addressed under Rule 12(b)(1). *See*, *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014); *Brown v. United States*, 151 F.3d 800, 803–04 (8th Cir. 1998). Here, defendants' sovereign immunity defense is brought as a facial challenge, and so the Court restricts itself to the face of the pleadings, and the Sundquist receives the same protections as he would facing a Rule 12(b)(6) motion.

### FAILURE TO STATE A CLAIM - FED. R. CIV. P. 12(B)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the nonmoving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## ANALYSIS

In their motion to dismiss, defendants first argue that Sundquist's claims against the State, the Attorney General's Office, and NDHHS, as well as against all the individual defendants in their official capacities, are barred

by sovereign immunity.[4] Next, defendants argue that Sundquist has failed to allege facts plausibly suggesting personal involvement by Bruning or Acierno, and so the claims against them in their individual capacities must be dismissed for failure to state a claim. Finally, defendants argue that the remaining defendants, Schuldt and Vierk, sued in their individual capacities, are entitled to qualified immunity. The Court finds merit in defendants' first two arguments, but not their third. Accordingly, Sundquist's claims for damages will be dismissed, with the exception of his claims against Schuldt and Vierk in their individual capacities. Defendants have not addressed Sundquist's request for injunctive relief. Therefore, that claim will proceed against all defendants.[5]

SOVEREIGN IMMUNITY

The Eleventh Amendment immunizes an unconsenting state from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action. *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999). This immunity encompasses not only actions where a state is actually named as a defendant, but also certain actions against state instrumentalities. *Id.*

There are three exceptions to Eleventh Amendment immunity. First, a state may waive immunity by consenting to suit in federal court; second, Congress may abrogate the state's immunity through a valid exercise of its powers; and third, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may file suit against state officials seeking prospective equitable relief for ongoing violations of federal law. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007).

Nebraska has not consented to suit, *Becker*, 191 F.3d at 908, and Congress did not abrogate the state's immunity in passing § 1983. *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 66–67 (1989); *Burk v. Beene,* 948 F.2d 489, 492-93 (8th Cir. 1991). Thus (with the exception of his request for injunctive relief) Sundquist's claims against the State of Nebraska are barred by sovereign immunity. The Attorney General's Office and NDHHS are arms

---

[4] Individual-capacity suits seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. *Id.* Thus, suits against state officials in their official capacities are treated as suits against the state itself. *See id.*

[5] This is not to suggest that Sundquist's claim for injunctive relief is plausible, or even that he has standing to bring such a claim on behalf of other, unspecified persons. But, for the simple reason that defendants have not moved to dismiss it, the claim remains pending for the time being.

of the state, and are therefore also entitled to sovereign immunity. *See Hadley v. North Arkansas Community Technical College*, 76 F.3d 1437, 1438 (8th Cir. 1996). And to the extent Sundquist has sued Bruning, Acierno, Vierk, and Schuldt in their official capacities, his suit is in reality one against the state, and those claims are likewise barred by sovereign immunity. *See Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012). In sum, the Court will dismiss Sundquist's claims for damages against the State, the Attorney General's Office, NDHHS, and the individual defendants sued in their official capacities.[6]

### CLAIMS AGAINST BRUNING AND ACIERNO

The doctrine of respondeat superior does not apply to § 1983 cases. *See Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). Thus, to state a claim against defendants in their individual capacities, Sundquist must plead facts suggesting that defendants were personally involved in the alleged violations of his constitutional rights. *Id.* The general duty of supervising is insufficient to establish personal involvement. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). Supervisors can, however, incur liability when their corrective inaction amounts to deliberate indifference to or tacit authorization. *See Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). Sundquist has failed to allege facts plausibly suggesting that Bruning or Acierno were personally involved in the alleged violations of his constitutional rights, or that they were deliberately indifferent to those violations. Accordingly, Sundquist's individual-capacity claims against Bruning and Acierno will be dismissed for failure to state a claim.

### QUALIFIED IMMUNITY FOR REMAINING DEFENDANTS SCHULDT AND VIERK

Sundquist argues that by requiring him to attend A.A. over his objections, on pain of losing his massage license, defendants violated his rights under the Establishment Clause and Free Exercise Clause. Schuldt and Vierk contend that, in 2013, it was not clearly established that this violated Sundquist's rights, and therefore, they argue, they are entitled to qualified immunity.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012);

---

[6] But because the dismissal is on jurisdictional grounds, it is without prejudice. *See Hart v. United States*, 630 F.3d 1085, 1091 (8th Cir. 2011); *see also*, *Ernst v. Rising*, 427 F.3d 351, 366–67 (6th Cir. 2005); *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 846–47 (9th Cir. 1999).

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson,* 555 U.S. at 231. In short, the plaintiff must plead facts showing that (1) the defendants violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2080 (2011). And the Court has discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *Id.*

For these purposes, a government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that any reasonable official would have understood that what he is doing violates that right. *Ashcroft,* 131 S. Ct. at 2080. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Messerschmidt,* 132 S. Ct. at 1245; *Pearson,* 555 U.S. at 244. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Messerschmidt,* 132 S. Ct. at 1245. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. *Id.* at 1244; *see also Ashcroft,* 131 S. Ct. at 2085.

Both sides have focused their arguments on cases where an unwilling prisoner, parolee, or (criminal) probationer has been forced to participate in A.A. (or a similar program). Due to the A.A.'s program's religious content, such conduct has been held to be coerced religious participation, in violation of the Establishment Clause. *See, e.g., Jackson v. Nixon,* 747 F.3d 537, 543 (8th Cir. 2014); *Inouye v. Kemna,* 504 F.3d 705, 711-12 (9th Cir. 2007); *Warner v. Orange Cnty. Dep't of Prob.,* 115 F.3d 1068, 1074-75 (2d Cir. 1997); *Kerr v. Farrey,* 95 F.3d 472, 479-80 (7th Cir. 1996). That is to say, if a court or corrections official specifically orders a person to attend A.A., over their objections and without offering a meaningful choice, then an Establishment Clause violation has occurred. *See id.* And it has further been held, in this context, that the right to be free from such coerced participation is clearly established. *Inouye,* 504 F.3d at 714-16.

The extent of defendants' argument in support of qualified immunity is that *Jackson* was not decided until 2014—after the alleged violations in this case—and therefore, the right could not be considered clearly established in

the Eighth Circuit in 2013. The defendant's argument—that just because the Eighth Circuit has not addressed an issue it is not clearly established—is wrong. The Eighth Circuit has explicitly rejected such a strict approach to qualified immunity. *See Johnson–El v. Schoemehl,* 878 F.2d 1043, 1049 (8th Cir. 1989). Instead, the Eighth Circuit subscribes to a "broad view" of what constitutes clearly established law: in the absence of binding precedent, the Court should look to all available decisional law, including decisions of state courts, other circuits, and district courts. *Tlamka v. Serrell,* 244 F.3d 628, 634 (8th Cir. 2001).

The holdings of *Jackson* and *Inouye*, among other cases, to the effect that prisoners, probationers, and parolees cannot be forced to participate in A.A., do not directly answer the question at hand. There is a difference between the coercion exerted through the criminal justice system, where liberty is at stake, and the coercion at issue here. But the Court nonetheless finds, by examining the general Establishment Clause principles animating these cases, and based upon other, more analogous cases, that Sundquist's asserted right was clearly established in 2013.

In *Jackson*, the plaintiff alleged that he was required to attend and complete a non-secular substance abuse program in order to be eligible for early parole. *Jackson,* 747 F.3d at 541. The Eighth Circuit held this to violate the Establishment Clause. The *Jackson* court began by observing that, in *Lee v. Weisman,* 505 U.S. 577, 588–89 (1992) the Supreme Court emphasized that, "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *See Jackson,* 747 F.3d at 541.

In evaluating a plaintiff's claim "that the state is coercing him or her to subscribe to religion generally, or to a particular religion," the Seventh Circuit has described a three-step inquiry, distilled from the principles underlying the Supreme Court's holding in *Lee*. *Kerr,* 95 F.3d at 479. That test asks: first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular? *Id.* at 479. In *Jackson*, the Eighth Circuit approved of and adopted this framework in analyzing the claim before it. *Jackson,* 747 F.3d at 542. The court accepted Jackson's allegations that the program contained some religious content, and there was no dispute that the state had acted. So, the real dispute was the second prong of the *Kerr* test: whether the state's action constituted coercion. *Id.* The *Jackson* court found that it was.

The Court of Appeals acknowledged that even if Jackson completed the substance abuse treatment program, he would not have been guaranteed early parole. *Id.* at 542. But his progress toward early parole did, in fact, stop when he left the program. *Id.* The Court of Appeals also acknowledged that

- 7 -

Jackson had no constitutional right to early parole. *Id.* at 543. Even so, the Court of Appeals found that the state had exerted coercive pressure:

> While inmates have no constitutional right to early parole, . . . Jackson does have the right to be free from unconstitutional burdens when availing himself of existing ways to access the benefit of early parole. The fact that Jackson did not have a constitutional right to, or statutory guarantee of, early parole does not preclude him from stating a claim of unconstitutional coercion. "*It is a tenet of the First Amendment that the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice.*" *Lee,* 505 U.S. at 596; *Kerr,* 95 F.3d at 474–75 (state "impermissibly coerced inmates to participate in a religious program" when the "penalty" for nonattendance at NA meetings was a potential "adverse impact on an inmate's security risk rating" and on his parole eligibility, though no inmate had ever received the risk rating penalty); *Griffin v. Coughlin,* 673 N.E.2d 98, 106 (N.Y. 1996) (state's requirement that inmates attend substance abuse treatment program's AA meetings to be eligible for the jail's discretionary Family Reunion Program was coercive). The Missouri Board of Probation and Parole may have discretion in deciding whether to grant early parole . . . , but that fact alone does not shield the defendants from potential liability for implementing a program that is alleged to violate the First Amendment.

*Id.* (emphasis supplied) (citations omitted and modified for completeness).

When confronted with a similar question, the Ninth Circuit also adopted the *Kerr* framework. *See Inouye,* 504 F.3d at 713. The *Inouye* court held that the law not only clearly prohibited such coerced participation in A.A. programs, but that this law "was and is very clear." *Id.* at 711.

> For the government to coerce someone to participate in religious activities *strikes at the core of the Establishment Clause* of the First Amendment, whatever else the Clause may bar. As Justice Black wrote in the first modern Establishment Clause case, *Everson v. Board of Education of Ewing Township,* 330 U.S. 1, 15–16 (1947), the clause "means at least" that "[n]either a state nor the Federal Government . . . . can force nor influence a person to go to or to remain away from church against his will or force

> him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance." This core holding has consistently been emphasized by the Court. "*It is beyond dispute* that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee,* 505 U.S. at 587 . . . .

*Inouye,* 504 F.3d at 712–13 (emphasis supplied) (citations modified).

As the foregoing shows, the holdings of *Jackson* and *Inouye* were straight-forward application of well established, core Establishment Clause principles. And while officers cannot be expected to predict the future course of constitutional law, the law may be clearly established even if there is no case directly on point. *Wilson v. Layne,* 526 U.S. 603, 615–617 (1999). Still, if the only cases on point arose in the probationer/parolee context, the Court *might* hesitate to find that the right asserted by Sundquist was clearly established. Sundquist faced not the loss of his liberty but the loss of his livelihood. However, there are other, more analogous cases, which clearly establish that this type of pressure nonetheless amounts to coercion.

In *Torcaso v. Watkins,* the Supreme Court held that the Establishment Clause does not permit a state to refuse a citizen public office (as a notary) for his failure to declare his belief in God. 367 U.S. 488 (1961). The *Torcaso* Court "repeat[ed] and again reaffirm[ed]" its earlier holding in *Everson*: "that neither a State nor the Federal Government can constitutionally force a person 'to profess a belief or disbelief in any religion.' Neither can [they] constitutionally pass laws or impose requirements which aid all religions as against non-believers . . . ." *Id.* at 495 (quoting *Everson,* 330 U.S. at 15). The *Torcaso* court rejected the lower court's finding that the plaintiff was not coerced because he was not compelled to hold office. *Id.* at 495.

> The fact, however, that a person is not compelled to hold public office cannot possibly be an excuse for barring him from office by state-imposed criteria forbidden by the Constitution. This was settled by our holding in *Wieman v. Updegraff,* 344 U.S. 183 (1952). We there pointed out that whether or not "an abstract right to public employment exists," Congress could not pass a law providing ". . . that no federal employee shall attend Mass or take any active part in missionary work."

*Id.* at 495–96 (citation modified).

- 9 -

More recent cases have confirmed that the Establishment Clause is violated when coercion is exerted by placing a public employee's job at stake. For example, in *Venters v. City of Delphi*, the Seventh Circuit held that discharging a public employee for not living up to her boss's religious expectations would "*of course* amount to a violation" of the Establishment Clause. 123 F.3d 956, 970 (7th Cir. 1997) (emphasis supplied). The *Venters* court went on to hold that even if the plaintiff's termination was "untainted by religious considerations," she may nonetheless have been subject to impermissible coercion if a jury believed her allegations that "she was repeatedly subjected to workplace lectures by [her supervisor] on his views of appropriate Christian behavior, to admonitions that she needed to be 'saved' and faced damnation, and to rather intimate inquiries into her social and religious life," and where the supervisor had "threatened to fire those whom he viewed as immoral." *Id.* Similarly, in *Marrero-Mendez v. Pesquera*, 2014 WL 4109518 (D.P.R. Aug. 19, 2014), the Court found an Establishment Clause violation where a police officer was forced to stand in formation and observe a prayer led by the commanding officer; and where after plaintiff complained, he was removed from his regular duties. The court moreover found that the right to be free from such coercion was clearly established. *Id.* at *5.

These cases rest upon a basic principle, one "made clear" by the Supreme Court: "that the type of coercion that violates the Establishment Clause need not involve either the forcible subjection of a person to religious exercises or the conditioning of relief from punishment on attendance at church services." *DeStefano v. Emergency Housing Group, Inc.*, 247 F.3d 397, 407 (2d Cir. 2001) (citing *Lee,* 505 U.S. at 586–99; *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 311–13 (2000)). "Coercion is also impermissible when it takes the form of 'subtle coercive pressure' that interferes with an individual's 'real choice' about whether to participate in worship or prayer." *Id.* at 412 (quoting *Lee,* 505 U.S. at 592, 595). And the government "'may no more use social pressure to enforce orthodoxy than [it] may use more direct means.'" *Id.* (quoting *Lee,* 505 U.S. at 594; *Santa Fe Indep. Sch. Dist.,* 530 U.S. at 312)) (cited with approval in *Jackson*, 747 F.3d at 541 & n.1).

The Court finds that, by 2013, it was clearly established that the government could not condition public employment on participation in religious activity. And it is equally clear that the government may not place such a condition on an individual's ability to practice a private, but regulated, occupation. There is no meaningful distinction in the coercive pressure exerted: what holds true for notaries and police officers is just as true for massage therapists. When the right to earn a living in one's chosen profession

is at stake, the government has interfered with the right to make a real choice about whether or not to participate in religious activity.

Applying the *Kerr* framework, the Court finds that Sundquist has alleged a plausible claim under the Establishment Clause. There is no dispute that the state has acted. Nor do defendants dispute Sundquist's allegations that the A.A. program contained substantial religious components. Indeed, it is clearly established that the typical A.A. program involves substantial religious components, such that it falls within the sphere of the Establishment Clause. *See DeStefano*, 247 F.3d at 407. Finally, the Court finds that Sundquist has plausibly alleged that he was subjected to impermissible coercion: he was forced to choose between participation in a program he objected to or continuing to earn a living in his chosen profession.

Sundquist may have agreed to participate in A.A. as a term of his probationary license. But that choice—to participate in A.A. or lose his livelihood—may have been the result of state-sponsored coercion rather than a voluntary choice. *See Jackson*, 747 F.3d at 541. At this stage of litigation, it is too early to say that by agreeing, Sundquist has forfeited his claim.[7] *See id.*

In sum, the Court finds that Sundquist has alleged a plausible claim under the Establishment Clause, and that defendants Vierk and Schuldt are not entitled to qualified immunity. It remains to be seen, of course, whether Sundquist can actually prove his claim and prove that he suffered actual damages—but he should have the opportunity to do so.

Two final matters bear noting; one substantive and the other procedural. First, the substantive matter. Sundquist has also alleged that defendants violated his rights under the Free Exercise Clause. But he has not presented any argument in support of such a claim—though, to be fair, defendants have also not moved to dismiss the claim. That said, it appears to the Court that Sundquist's claim is properly analyzed under the Establishment Clause, and that the Free Exercise Clause does not add anything to his case. *See Munson v. Norris*, 435 F.3d 877, 880–881 (8th Cir. 2006). Therefore, the Court will dismiss Sundquist's Free Exercise claim, albeit with leave to replead.

The final procedural matter to address is Sundquist's Motion for Extension of Time (filing 19), which is, in essence, a request to file a sur-reply

---

[7] Moreover, from the terms of his probationary license, it is not clear that Sundquist actually did agree to participate in A.A. The terms of his probationary license are perhaps ambiguous. Sundquist was required to: "Develop a sober support system *such as* attending twelve step meetings such as Alcoholics Anonymous." *See* Licensure Records, Letter of December 4, 2012, at 2 (emphasis supplied). But the terms of probation then go on to state: "To comply with this recommendation, you must attend a minimum of 1 Alcoholics Anonymous meeting per week." Licensure Records, Letter of December 4, 2012, at 2.

and a request for oral argument. The Court finds that no sur-reply is needed, nor, at this time, is oral argument. Therefore, Sundquist's motion will be denied, and defendants' objection (filing 20) to Sundquist's motion will be denied as moot. Accordingly,

IT IS ORDERED:

1. Defendants' motion to dismiss (filing 11) is granted in part and denied in part:

    a. Sundquist's claims for damages against the State of Nebraska, the Attorney General's Office, and NDHHS, as well as his claims against the remaining individual defendants in their official capacities, are dismissed without prejudice;

    b. Sundquist's individual-capacity claims against Bruning and Acierno are dismissed for failure to state a claim;

    c. Sundquist's individual-capacity claims against Vierk and Schuldt, under the Establishment Clause, may proceed;

    d. Sundquist's individual-capacity claims against Vierk and Schuldt under the Free Exercise Clause are dismissed, but with leave to replead on or before August 28, 2015; and

    e. Sundquist's claim for injunctive relief remains pending against all defendants.

2. Sundquist's Motion for Extension of Time (filing 19) is denied.

3. Defendants' objection (filing 20) is denied as moot.

Dated this 10th day of August, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge